**Walter WINSTON and Corrine Cummings, on their own behalf and on behalf of all others similarly situated, Plaintiffs,**

v.

**UNITED STATES POSTAL SERVICE, Benjamin F. Bailar, in his official capacity as Post-Master General, Emmett E. Cooper, Jr., in his official capacity as post master of the Chicago Post Office, American Postal Workers Union, AFL–CIO, Robert E. Hampton, Jayne B. Spain and L. J. Andolsek, Commissioners of the U. S. Civil Service Commissions, Defendants.**

No. 75 C 2932.

United States District Court, N. D. Illinois, E. D.

April 13, 1977.

---

Charles A. Linn and Anthony J. Fusco, Jr., Legal Assistance Foundation, Mark Kruger, Land of Lincoln Legal Assistance Foundation, Inc., East St. Louis, Ill., Chicago, Ill., for plaintiffs.

Samuel Skinner, U. S. Atty., Peggy A. Hillman, Cotton, Watt, Jones, King & Bowlus, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

KIRKLAND, District Judge.

This matter is before the Court on: (1) Defendants' Motions for Reconsideration of this Court's Memorandum Opinion and Order of June 30, 1976; (2) the parties' Motions for Summary Judgment; and (3) a Motion to Dismiss the Defendant members of the Civil Service Commission. This Court grants Defendants' Motions for Reconsideration, vacates the June 30, 1976 Memorandum Opinion and enters this opinion.

The facts of this case are not in dispute. Plaintiffs are former employees of Defendant United States Postal Service ("USPS") and members of Defendant American Postal Workers Union (the "Union"). Plaintiffs were discharged from USPS while working under the 1973 National Agreement between USPS and the Union. That agreement contained a grievance procedure, which included as a final step, a binding third party arbitration. The grievance procedure permitted an employee to be represented by a union representative, not an attorney, and did not allow the employee to confront or cross-examine witnesses. Although grievances were initially resolved before USPS officials, a dissatisfied party's union representative could ultimately appeal an adverse USPS decision to a third-party arbitrator.

In the present case, each plaintiff was discharged for various specified activities. Defendant Union filed grievances on behalf of Plaintiffs and represented them in the

discharge procedures initiated by Defendant USPS. The Union was unsuccessful in the defense before USPS officials and Plaintiffs were discharged. Defendant Union refused to appeal the discharge order to an arbitrator.

Plaintiffs' Complaint challenges the procedure used in effecting the discharges, arguing that the procedure violates Due Process. Jurisdiction is invoked pursuant to the Fifth Amendment to the United States Constitution and 28 U.S.C. §§ 1331 and 1343(4).

On March 30, 1977 this Court certified a class of Plaintiffs consisting of:

all regular, full-time, non-probationary employees of the U. S. Postal Service, Chicago Regional Office who have been or may be discharged or suspended without being afforded an opportunity for a fair and impartial hearing with a right to confront and cross-examine witnesses.

The parties now seek summary judgment on the Complaint, each alleging entitlement to that relief as a matter of law.

## I. MOTIONS FOR SUMMARY JUDGMENT BY DEFENDANTS UNION AND USPS

Defendants' Motions for Summary Judgment necessitate ruling on two questions of law: (1) whether the hearing provided was the type of hearing intended by Congress when it enacted the Postal Reorganization Act (the "Act"); and (2) whether the hearing provided violated Due Process.

### A. *Statutory Interpretation Issue*

■ Defendants first contend that a grievance procedure culminating in binding third party arbitration was contemplated by Congress when the Act was enacted. This Court agrees. The legislative history of the Act makes clear that non-preference eligible employees covered by collective bargaining agreements are limited to grievance procedures in resolving adverse actions.

The summary of House Bill 91–1104, enacted on August 3, 1970, indicates that Congress intended that postal employees be treated in the same fashion as employees in private enterprise:

Although the needs for postal reform are as interrelated as they are manifold, certainly no single need is more insistent than that for reform of the labor-management structure. Events of last March, [a labor strike by USPS employees] however deplorable they may be, have finally established that a basic change in postal labor relations is overdue. Although contemporary labor relations in the private sector of the national economy have not been free of problems, they add up to a triumphant success compared with those in the Postal Service. Generally speaking, H.R. 17070 would bring postal labor relations within the same structure that exists for nationwide enterprises in the private sector. 2 U.S. Cong. & Admin.News (1970) at 3662.

The legislature codified its views in Sections 1005(a)(1) and (2) of the Act. These sections make a fundamental distinction between the types of hearings to which preference eligible and non-preference eligible employees are entitled. Section 1005(a)(2) gives preference eligible employees the right of access or appeal to the Civil Service Commission for a "trial type" hearing. Alternatively, preference eligible employees may choose collective bargaining procedures. Access to the Civil Service Commission cannot be denied, even when preference eligible employees have entered into a collective bargaining agreement with USPS.

■ No such provision for alternative remedies is available to non-preference eligible employees. Under Section 1005(a)(1) access to the Civil Service Commission ends when such access is inconsistent with "the provisions of any collective-bargaining agreement negotiated on behalf of and applicable to them" or with "procedures established by the Postal Service and approved by the Civil Service Commission." It is clear that Congress intended to make collective bargaining agreements control as to non-preference eligible employees covered by the collective bargaining agreements

and to make Postal Service regulations applicable *only* until employees reached collective bargaining agreements with USPS.

This Court is not persuaded that Section 1001 of the Act indicates Congressional intent that a "trial type hearing" is required before dismissal of non-preference eligible employees. This Court agrees with the reasoning of the Sixth Circuit in *Malone v. United States Postal Service,* 526 F.2d 1099 (1975):

> [T]he primary, if not the only, application of section 1001 is the regulation of the agency and Civil Service Appeal portion of the dual system Congress authorized for the settlement of labor-management disputes subject to the Postal Reorganization Act. . . . Congress not only required that employees be given an opportunity for a fair hearing, and made the hearing requirements for preference eligible veterans specifically applicable to postal employees, but it also permitted the parties to a Postal Service collective bargaining agreement to include a grievance arbitration clause.

> The hearing requirement of section 1001 is directed at the required agency and Civil Service appeals procedures, not at grievance arbitration procedures that might be adopted in a collective bargaining agreement. Similar language regarding the employee's right of representation is found in the regulations governing the agency and Civil Service appeals. (526 F.2d at 1107)

Accordingly, this Court finds that the grievance arbitration procedure adopted by USPS and the Union is the remedy for non-preference eligible employees which was contemplated by Congress when it enacted the Act.

### B. *Constitutional Issues*

Defendants next contend that the USPS grievance procedure does not violate Due Process. In support of this contention, Defendants make three arguments:

(1) Plaintiffs have failed to demonstrate a "property interest" in continued employment with USPS which is entitled to Due Process protection; or

(2) even if Plaintiffs have a property interest in continued employment, their Due Process rights have been adequately protected by the bargained-for grievance arbitration procedures; or

(3) even if the grievance arbitration procedure is found by this Court to lack Due Process protections, Plaintiffs' adoption of the arbitration procedure constitutes a waiver of Due Process claims.

The Court considers these arguments *seriatim.*

### 1. *Property Interest*

■ This Court finds that Plaintiffs have a property interest in continued employment with USPS that is entitled to Due Process protection.

Plaintiffs have a cognizable property interest in their expectation of continued Federal employment. Section 1001(b) of the Act mandates "full protection of [employees'] rights by guaranteeing . . . an opportunity for a fair hearing." The Act provides for no further contingencies on the employment of USPS employees. In *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) the Supreme Court recognized that property interests are created by rules or understandings which secure benefits and support claims of entitlement to benefits. When an employee has a statutory right to remain in his job unless just cause for his removal can be shown, then that employee enjoys a property interest in employment that is entitled to Due Process protection, *Arnett v. Kennedy,* 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974). Plaintiffs have adequately established a property interest in continued employment with USPS.

### 2. *The Grievance Procedure*

■ Defendants next argue that the grievance procedures agreed to by USPS and the Union satisfy Due Process requirements.

The Seventh Circuit has recognized that Congress gave USPS "broad powers regarding employment" as the result of the Act, *Standard Oil Division, American Oil Company v. Starks,* 528 F.2d 201 (7th Cir. 1975). This Court has already found that the Act creates a "property interest" in continued employment with USPS. The Act further prescribes the procedural means by which that right is to be protected, namely, by a collective bargaining procedure chosen by the employees. Since Congress created the property interest in continued employment in the Act and in the same Act set forth the procedure for protection of that interest, this Court may find that employees of USPS were entitled to no Due Process protection beyond that afforded by the collective bargaining agreement, *Arnett v. Kennedy,* 416 U.S. 134, 164, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974) (Rehnquist, J.). However, even an independent examination of the grievance procedure established under the collective bargaining agreement here demonstrates that Due Process requirements have been satisfied.

Plaintiffs were given notice of the charges for which dismissal was recommended and an opportunity to be heard through the bargained-for grievance procedure which could culminate in binding arbitration. Although the exact nature of Due Process may vary from situation to situation, *Cafeteria Workers v. McElroy,* 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961), the Supreme Court has clearly indicated that notice of the pending claim and an opportunity to be heard on the claim satisfies Due Process, *Boddie v. Connecticut,* 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971). Due Process does not necessarily require a "trial type" hearing before dismissal of an employee or an opportunity to confront and cross-examine witnesses. The grievance procedure established by USPS and the Union gave Plaintiffs notice of pending charges and an opportunity to be heard by presenting their grievances to an appropriate supervisor through a "representative of [Plaintiffs'] own choosing," i. e., the Union. Further, Plaintiffs' representative could choose to bring further pro-

ceedings before a neutral arbiter and could be sued by Plaintiffs if failure to bring the case to the arbiter was a breach of duty to fairly represent.

Other courts which have been called upon to interpret these provisions of the Act in the context of Due Process have reached a similar conclusion. *See, e. g., Malone v. United States Postal Service, supra; Tufts v. United States Postal Service,* 431 F.Supp. 484 (N.D.Ohio 1976).

Accordingly, this Court finds that the grievance procedure established by the agreement between USPS and the Union satisfies Due Process.

### 3. *Waiver*

Because this Court finds that the grievance procedures satisfy Due Process, it is not necessary to reach the waiver issues raised by Defendants.

## II. MOTION TO DISMISS MEMBERS OF THE CIVIL SERVICE COMMISSION

The parties agree that if the Court were to find that the established collective bargaining procedures for resolution of adverse matters are valid, Plaintiffs would no longer be subject to Civil Service Commission jurisdiction. Because this Court has so found, Defendant members of the Civil Service Commission Robert E. Hampton, Jayne B. Spain and L. J. Andolsek are hereby dismissed.

### CONCLUSION

Motions for Summary Judgment by Defendants USPS and Union are granted. Because summary judgment has been given to Defendant USPS, Defendants Benjamin F. Bailar and Emmett E. Cooper, who were joined solely as USPS officials, are also given summary judgment.

Motion for Summary Judgment by Plaintiffs is denied.

Motion to Dismiss by Defendant members of the Civil Service Commission is granted.